UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MELONY V.[1], <br><br>               Plaintiff, <br><br>     v. <br><br> MARTIN O'MALLEY, <br> Commissioner of Social Security <br> Administration,[2] <br><br>            Defendant. | Case No.  1:23-cv-00066-CWD <br><br> **MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Plaintiff Melony V. brings this action under the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner).  The Commissioner denied Plaintiff's application for Disability Insurance Benefits under Title II of the Act. 42 U.S.C. § 401 *et seq.*  Following the Court's consideration of the Complaint (Dkt. 1), the administrative record and the parties' submissions, and for the reasons that follow, the decision of the Commissioner will be affirmed.

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Martin J. O'Malley was sworn in as the Commissioner of Social Security Administration on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin J. O'Malley will be substituted as the Defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

42 U.S.C. § 405(g) provides for judicial review of the Social Security Administration's disability determinations: "The court shall have the power to enter … a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  The Court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record.  *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted).  The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion."  *Martinez v. Heckler*, 907 F.2d 771, 772 (9th Cir. 1986).  "Where the evidence as a whole can support either a grant or denial, [the court] may not substitute [its] judgment for the ALJ's."  *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation").  "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."  *Orn v. Astrue*, 495 F.3d. 625, 630 (9th Cir. 2007) (quotation omitted).

MEMORANDUM DECISION AND ORDER - 2

**BACKGROUND**

I.      **Plaintiff's Application**

Plaintiff alleges disability based on her hypertension, heart failure, mini strokes, vision issues, swollen optical nerve, and blindness.  AR 355.[3]  At the time of her alleged onset date of December 20, 2016, Plaintiff was 39 years of age.  AR 19, 31.  She has a high school education and past relevant work experience as a technical support representative.  AR 31.

Plaintiff protectively applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on January 9, 2020, alleging an onset date of December 20, 2016.[4]  AR 19.  Her application was denied initially on May 13, 2020, and on reconsideration on January 6, 2021.  *Id.*  Plaintiff next requested a hearing, which was conducted by telephone on November 3, 2021, before Administrative Law Judge ("ALJ") Stephen Marchioro.  AR 19, 33.  Plaintiff appeared and testified at the hearing, represented by counsel; a vocational expert ("VE"), Amanda Munzer, also testified.  AR 46-78.  On December 23, 2021, the ALJ issued a decision denying Plaintiff's application.  AR 19-33.  Plaintiff requested Appeals Council review, which was denied on December 1, 2022.  AR 5-14.  Plaintiff timely sought review before the Court.

---

[3] Citations to "AR" are to the Administrative Record. (Dkt. 13.)
[4] At the hearing, Plaintiff amended her alleged onset date from December 20, 2016, to November 18, 2019.  AR 19, 45.

## II.     Sequential Disability Process

The initial burden of proof rests upon the claimant to establish disability.  *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986).  To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected… to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Commissioner has established a five-step process for determining whether a person is disabled.  *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.  At the step one, the Commissioner determines whether the claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled.  *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 414.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments."  *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(c).  A severe impairment is one "which significantly limits [the claimant's] physical and mental ability to do basic work activities[.]"  20 C.F.R. §§ 404.1520(c), 416.920(c).  If not, the claimant is not disabled.  *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges as severe as to preclude substantial gainful activity."  *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d).  If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds.  *Yuckert*, 482 U.S. at 141.  At this point, the Commissioner must evaluate

medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations their impairment impose.  20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c).

At step four, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e).  If the claimant can work, they are not disabled; if they cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert,* 482 U.S. at 146 n. 5.

Finally, at step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy.  *Id.* at 142; 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. §§ 404.1566, 416.966.

## III.    The ALJ's Decision

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after her alleged onset date of November 18, 2019.  AR 21.  Therefore, the ALJ continued with the sequential process.  *Id.*

At step two, the ALJ determined that Plaintiff has the following severe impairments: "degenerative disc disease; bilateral keratoconus; idiopathic intracranial hypertension; and obesity."  AR 22.

At step three, the ALJ determined that Plaintiff's impairments do not meet or medically equal the severity of a listed impairment.  AR 22-24.  The ALJ then assessed Plaintiff's residual functional capacity ("RFC"), finding that Plaintiff:

> [H]as the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), with the following exceptions: [Plaintiff] can frequently balance, as that term is defined in the [Selected Characteristics of Occupations].[5]  [Plaintiff] can frequently kneel. [Plaintiff] can occasionally climb ramps and stairs.  [Plaintiff] can occasionally stoop, crouch, and crawl.  [Plaintiff] can never climb ladders, ropes, or scaffolds.  [Plaintiff] needs to avoid all exposure to extreme cold. [Plaintiff] needs to avoid all exposure to unguarded moving mechanical parts, such as table saws, band saws, or exposed mechanical gears. [Plaintiff] needs to avoid all exposure to unprotected heights.  Finally, [Plaintiff] is limited to work that would allow her to don and wear sunglasses and/or protective goggles at her discretion; and [Plaintiff] is limited to work that would allow her to wear gas-permeable contact lenses.

AR 24.

At step four, the ALJ found that Plaintiff has past relevant work as a technical support representative.  AR 30.  The ALJ found that Plaintiff is able to perform her past relevant work, both as actually performed and per the DOT.  AR 31.

In addition to past relevant work, at step five—considering Plaintiff's age, education, work experience, and RFC—the ALJ found that a significant number of jobs exist in the national economy that Plaintiff can perform, including work as food and

---

[5] The Selected Characteristics of Occupations (SCO) defines "balance" as maintaining body equilibrium to prevent falling when walking, standing, crouching, or running on narrow, slippery, or erratically moving surfaces; or maintaining body equilibrium when performing gymnastic feats.  AR 24.

beverage order clerk, callout operator, and touchup screener.  AR 32.  The ALJ

concluded Plaintiff is not disabled.  AR 32-33.

## DISCUSSION

Plaintiff raises three issues on appeal.  First, Plaintiff contends that the ALJ

improperly rejected Plaintiff's subjective symptom testimony regarding her vision

impairment without offering clear and convincing reasons for doing so.  (Dkt. 15 at 4-6.)

Second, Plaintiff asserts that the ALJ improperly rejected medical opinions under the

"supportability" and "consistency" standard.  (Dkt. 15 at 7-12.)  Finally, Plaintiff

contends that the ALJ erred in the RFC finding due to a lack of support in the record.

(Dkt. 15 at 12-13.)  The Court finds that the ALJ did not commit legal error.  As more

fully explained below, the decision of the Commissioner will be affirmed.

## I.     The ALJ offered clear and convincing reasons in rejecting Plaintiff's subjective symptom testimony regarding her vision impairment.[6]

### a.  Legal Standards

The ALJ is responsible for evaluating symptom testimony.  SSR 16-3p, 2017 WL

5180304, at *1 (Oct. 25, 2017).  There is a two-step process for evaluating a claimant's

testimony about the severity and limiting effect of his symptoms.  *Vasquez v. Astrue*, 572

F.3d 586, 591 (9th Cir. 2009).  First, the claimant must produce objective medical

evidence of one or more impairments that could reasonably be expected to produce some

_____

[6] Although Plaintiff also testified to experiencing limitations from back pain, anxiety, and auditory hallucinations, Plaintiff argues only that the ALJ erred in rejecting the symptom testimony regarding her vision impairment.  (Dkt. 15, n. 3.)

degree of symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptoms, but only to show that it could reasonably have caused some degree of symptoms. *Id.*

Second, the ALJ must assess the claimant's testimony regarding the severity of the symptoms. *Id.* The ALJ can reject the claimant's testimony "only by offering specific, clear, and convincing reasons for doing so." *Id.* Thus, the ALJ must specifically identify the testimony that she does not credit and must explain what evidence undermines the testimony. *Holohan*, 246 F.3d at 1208. General findings are insufficient to support an adverse determination; the ALJ must rely on substantial evidence. *Id.* To discredit a claimant's testimony regarding the degree of impairment, the ALJ must make a "determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). On review, an ALJ's findings must be "properly supported by the record," and "sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding [symptoms]." *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc).

   b. <u>Analysis</u>

At the hearing before the ALJ, Plaintiff testified that she stopped working on the amended alleged onset date because her vision issues present a "hazard." AR 51. She

also indicated she does not think she could work in her past call center role, because her vision is "not that good" if she does not wear her contacts.  AR 57.  Further, she testified that she does not wear her contacts because they are rigid, glass, and gas permeable, so she can only wear them a couple hours—at most, five hours per day.  AR 57-58.  She indicated that she can read or use a computer for only 30 minutes when wearing her contacts.  Further, she testified that, because of her cornea condition, she can wear only these type of glass contacts.  AR 60.  She indicated that, when she is wearing her contacts, anything in the air, fluorescent lights, and the cold irritate her eyes.  AR 60.  She testified that her sister helps her with cleaning her house once a week, because Plaintiff cannot see.  AR 52.

At the first step, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms."  AR 25. However, in applying the second step, the ALJ concluded that Plaintiff's testimony about "the intensity, persistence, and limiting effects of [her] symptoms are not entirely consistent with evidence in the record."  *Id.*

Plaintiff asserts that the ALJ erred in rejecting Plaintiff's testimony regarding her because the ALJ failed to articulate specific, clear, and convincing findings in doing so. (Dkt. 15 at 6.)  Specifically, Plaintiff contends that the ALJ did not provide clear and convincing evidence to show that the symptoms and limitations that Plaintiff testified to do not exist.  *Id.*  The Court is unconvinced and instead finds that the ALJ provided sufficient reasons, based on substantial evidence, for rejecting Plaintiff's testimony.

Here, Plaintiff has a diagnosis of bilateral keratoconus.  AR 27.  Plaintiff argues that the ALJ failed to enumerate Plaintiff's allegations regarding her vision impairment and to identify specific inconsistencies with the objective medical evidence.  (Dkt. 15 at 6.)  To begin, Plaintiff argues that the ALJ failed to address Plaintiff's testimony that she can only wear her contacts for short periods of time, and that, even during these short periods, looking at a computer screen hurts her eyes.  (Dkt. 15 at 6.)

However, although Plaintiff testified that she "finds it difficult to wear" her contacts for "long periods, and [that] she continues to experience vision loss and photophobia despite her treatment," the ALJ noted that Plaintiff has not returned to the prescribing specialist to address her continued vision issues and limitations while wearing the contacts since February of 2020.  AR 27 (citing AR 784).  The ALJ concluded that Plaintiff's failure to seek follow-up treatment is inconsistent with her claims of disabling symptoms or pain.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (noting ALJ may consider unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment in evaluation of subjective complaints); *see also Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) ("[I]f a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated."); *see also Gilder v. Berryhill*, 703 F. App'x 597, 598 (9th Cir. 2017) (upholding ALJ's finding that plaintiff's "sporadic treatment history" and

failure to seek treatment "despite the availability" of suitable healthcare "undermined testimony").

There was also substantial evidence that Plaintiff's symptom allegations were inconsistent with the objective evidence in the record.  An ALJ may discount a claimant's subjective symptom testimony that is contradicted by medical evidence.  *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008).  Specifically, an ALJ may reject a claimant's testimony when the symptoms allegations are unsupported by the opinion of a medical provider.  *See Stubbs-Danielson v. Astrue*, 539 1169, 1175 (9th Cir. 2008).  Here, the ALJ found that, because Dr. Betts, Plaintiff's treating ophthalmologist, opined that Plaintiff's blurred vision was disproportionate to objective findings and that she could perform most job functions, Dr. Bett's medical opinion did not support the severity of Plaintiff's symptom allegations.

There also was substantial evidence in the record that Plaintiff had shown improvement in her symptoms after treatment, which the ALJ was entitled to rely on to discount Plaintiff's subjective complaints regarding her vision.  *See* 20 C.F.R. § 416.929(c)(3)(iv)-(v) ("An ALJ may discount a claimant's subjective complaints if the record shows effective treatment.")  More broadly, "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability."  *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017).  The ALJ found that Plaintiff's condition is less serious than alleged because it improved with treatment.  AR 27.  The ALJ noted that, shortly after experiencing worsened vision following hospitalization for

hypertension in December of 2019, Plaintiff's vision, without contacts, was 20/160 in her right eye, 20/100 in her left eye, and 20/100 in both eyes. AR 27 (citing AR 675). The ALJ further cited a neurological progress note from February of 2020, stating that Plaintiff experienced significant improvement in her right eye visual acuity. AR 637-38. The ALJ noted that, by March of 2020, Plaintiff reported that her photophobia had improved. AR 665. The ALJ also noted that, in May and June of 2020, Plaintiff had 20/20 vision when wearing her contacts. AR 27 (citing AR 747, 749).

The Court is mindful that "[r]eports of 'improvement'" must be interpreted with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) (citing *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001)). But when considering the record as a whole, there was substantial evidence here that Plaintiff's treatment was having positive effect, and the ALJ was entitled to rely on this evidence to discount Plaintiff's subjective symptom testimony.

Even if other reasonable explanations outside of the ALJ's conclusion exist, the ALJ's interpretation is supported by substantial evidence available in the record. When the ALJ's interpretation of the evidence is reasonable and supported by substantial evidence, the reviewing court should not relitigate it, even if other reasonable interpretations exist. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Here, although Plaintiff offers an alternative interpretation of other objective medical opinions

**MEMORANDUM DECISION AND ORDER - 12**

available in the record, the ALJ's interpretation is well-supported by the evidence

mentioned above. Therefore, the Court will affirm the ALJ's conclusion that the

Plaintiff's symptom testimony is inconsistent with the medical evidence.

## II.     The ALJ properly rejected the medical opinion evidence under the "supportability" and "consistency" standard.

### a.   Legal Standards

For claims filed on or after March 27, 2017, the revised regulations apply.

*Revisions to Rules Regarding the Evaluation of Medical Evidence* (*"Revisions to Rules"*),

2017 WL 168819, 82 Fed. Reg. 5844-01, at *5867-68 (Jan. 18, 2017).  Under these

regulations, the ALJ is not required to "defer or give any specific evidentiary weight,

including controlling weight, to any medical opinion(s)."  20 C.F.R. § 404.1520c(a).

Instead, the ALJ must consider all the medical opinions in the record and evaluate each

medial opinion's persuasiveness using certain factors.  *Id.*  The two most important

factors in determining a medical opinion's persuasiveness are the opinion's

"supportability" and "consistency."  20 C.F.R. §§ 404.1520c(a), 416.920c(a).  The ALJ

must articulate "how [he or she] considered the supportability and consistency of factors

for a medical source's medical opinions… in [his or her] decision."  20 C.F.R. §§

404.1520c(b)(2), 416.1520c(b)(2).

With regard to supportability, the "more relevant the objective medical evidence

and supporting explanations presented by a medical source are to support his or her

medical opinion(s), the more persuasive the medical opinions… will be."  20 C.F.R. §§

404.1520c(c)(2), 416.920c(c)(2).  As to consistency, the "more consistent a medical

opinion(s) is with the evidence from other medical sources in the claim, the more persuasive the medical opinion(s)… will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The ALJ is not required to explain how they considered other factors, unless the ALJ finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. *See* 20 C.F.R. §§ 404.1520c(b)(3), 416.1520c(b)(3). Moreover, in reviewing the ALJ's decision, the Court must consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(j); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989).

Even if there is some error, the Court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111. An error is harmless when it is inconsequential to the ultimate non-disability decisions. *Stout*, 454 F.3d at 1055. In other words, "an error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error 'does not negate the validity of the ALJ's ultimate conclusion.'" *Molina*, 674 F.3d at 1115 (quoting *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). Courts look to the record as a whole to determine whether an error alters the outcome of a case. *Molina*, 674 F.3d at 1115. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Stout*, 454 F.3d at 1055 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

b.  <u>Analysis</u>

1.   *Brent Betts, MD*

Plaintiff's treating ophthalmologist, Dr. Brent Betts, completed a questionnaire regarding Plaintiff's disability in September of 2020.  As mentioned above, Dr. Betts noted that he completed a medical examination of Plaintiff on February 25, 2020, and no follow-up appointment was scheduled.  AR 725.  Dr. Betts also noted that, on June 15, 2020, Plaintiff was fitted for her gas permeable contacts.  AR 725.  In completing the questionnaire, Dr. Betts noted that Plaintiff was able to return to work while wearing her contacts as of June 16, 2020, and had no further limitations or restrictions as of June 16, 2020.  AR 724-25.  Specifically, Dr. Betts recorded that Plaintiff is able to read standard print; is able to read with accommodations (i.e., her contact lenses); is able to read a standard computer screen; able to read a standard computer with accommodations (i.e., her contact lenses); is able to write; is able to perform tasks requiring fine detail; is able to perform tasks requiring gross manipulation; and is able to drive.  AR 725.

In a separate letter dated November 4, 2021, Dr. Betts further opined that, as long as Plaintiff wears her rigid gas permeable contact lenses, she "should be able to perform most job functions unless her visual field examination precluded that." Tr. 784.  Dr. Betts also noted that some patients using rigid gas permeable contact lenses require breaks to remove and clean the lenses, and that "work arrangements should be made for that possibility." AR 724.  The ALJ found Dr. Bett's opinions to be persuasive, because they

are supported by Plaintiff's 20/20 corrective vision and consistent with Plaintiff's return to work in August of 2021.  AR 28-29.

Plaintiff argues that the ALJ erred by failing to discuss Dr. Bett's qualification that some patients that wear gas permeable contact lenses may need breaks at work to remove and clean the lenses.  (Dkt. 15 at 11-12.)  However, the ALJ is required to rely only on specific imperatives regarding Plaintiff's limitations, rather than on recommendations. *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1005 (9th Cir. 2015) (citing *Carmickle*, 533 F.3d at 1164).  Here, Dr. Bett's comment about the possible need for breaks was offered as a recommendation, not an imperative, regarding Plaintiff's limitations.  *See Carmickle*, 533 F.3d at 1164.  Thus, the ALJ did not err in relying on Dr. Bett's specific statements regarding Plaintiff's specific limitations, rather than on a recommendation general to anyone wearing gas permeable contact lenses.

Even if the ALJ erred by not discussing Dr. Bett's qualification, the error is harmless.  Plaintiff testified that she is able to wear her gas permeable contract lenses for, at most, five hours.  AR 58.  Therefore, any need for a break to remove and clean her contact lenses is accounted for in a regular eight-hour workday with normal breaks.  *See Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (applying harmless error doctrine in the social security context where the "mistake was non-prejudicial to the claimant").

    2.     *State Agency Consultant Barry Cusack, MD*

State agency medical consultant, Dr. Barry Cusack, performed a medical evaluation of Plaintiff for the DIB claim at the reconsideration level in January of 2021. AR 95-132.  In the evaluation, Dr. Cusack found that Plaintiff has limited color vision in both eyes, and that Plaintiff has visual limitations, including a need to avoid working in bright conditions, to wear tint glasses indoors as necessary to guard from photophobia, and to wear gas permeable contacts to perform vision tasks.  AR 107-08, 126-27.  The ALJ found Dr. Cusack's opinion was supported by medical evidence in the record and consistent with Plaintiff's ability to return to work in August of 2021.  AR 29.  Further, the ALJ found that Dr. Cusack's opinion is "more persuasive" than Dr. Spackman's medical evaluation at the initial review level in May of 2020, because Dr. Cusack's opinion includes limitations to accommodate Plaintiff's vision.  AR 29.  Even so, the ALJ found that Plaintiff's "use of sunglasses, goggles, and gas permeable contact lenses are sufficient to accommodate her vision impairment, without restrictions to bright lights or limitations with regard to color vision."  AR 29.

Plaintiff argues that the ALJ substituted his own judgment for that of the state agency medical consultant by finding that the use of sunglasses, goggles, and gas permeable contact lenses is sufficient to accommodate her vision impairment, without restrictions to bright lights or limitations with regard to color vision.  (Dkt. 15 at 9.) However, Dr. Cusack's medical opinion does not outline any functional limitations that contradict the ALJ's ultimate conclusion.  "An ALJ's RFC finding need only be consistent with relevant assessed limitations and not identical to them."  *Mendoza v.*

*Kijakazi*, 1:19-CV-1371-HBK WL 715096, at *4 (E.D. Cal. Mar. 10, 2022) (citing *Turner v. Comm'r Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010). Here, the ALJ determined that Plaintiff has an RFC to perform "sedentary work" with multiple physical limitations, including Plaintiff's need to wear sunglasses and/or protective goggles at her discretion, to wear gas permeable contact lenses, and to avoid exposure to extreme cold. AR 24. Although Dr. Cusack opined that Plaintiff has some limitations with regard to her vision, the ALJ adjusted those capabilities and listed limitations that are appropriately reflected and incorporated in Plaintiff's RFC, considering Plaintiff's subjective testimony about her ability to wear gas permeable contact lenses for five hours per day and the eye irritation she experiences due to anything in the air, fluorescent lights, and cold. AR 57-58, 60.

Additionally, the ALJ's step five finding did not contradict any medical opinion found in the record. Even though Plaintiff contends that the ALJ was substituting his own judgment in translating Plaintiff's symptoms and medical records to an RFC of "sedentary work," the ALJ was translating the recorded limitations into an RFC that is consistent with the record as a whole. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, available at 1996 WL 374183, at *5.

Contrary to Plaintiff's argument, the claimant has the burden of establishing functional limitations and proving she was disabled. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). "The ALJ is responsible for studying the record and resolving any conflicts or ambiguities in it." *Diedrich v. Berryhill*, 874 F.3d

634, 638 (9th Cir. 2017).  Further, the ALJ is required to develop the record only "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."  *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001).  Here, the ALJ was required to utilize the whole record, not only the medical opinions, in formulating Plaintiff's RFC.  Additionally, Plaintiff has not argued that the record was inadequate for proper evaluation of the evidence without another medical opinion, nor pointed to other medical opinions or evidence in the record that contradict the ALJ's ultimate conclusion.

### 3.    *Eli Thornton, CFNP*

Plaintiff's family nurse practitioner (NP), Eli Thornton, completed a questionnaire regarding Plaintiff's disability in July of 2020.  AR 727-728, 730, 732.  NP Thornton noted that Plaintiff could stand intermittently for four hours per day, but that prolonged standing can cause leg edema; that she should never climb or drive; that she could only occasionally balance, kneel, or crouch; that she could occasionally lift 20lbs; that she could only occasionally engage in gross manipulation (i.e., "grip/grasp, handle"); and that she had decreased vision due to irritation attributable to the prolonged use of her contact lenses.  AR 727-28.  In a separate form, NP Thornton also noted that Plaintiff is "unable to focus/read computer screens."  AR 730.

The ALJ found NP Thornton's opinion was based on treatment history, supported by Plaintiff's 20/20 vision and improved blood pressure, and consistent with Plaintiff's ability to return to work in August of 2021.  AR 29.  Further, the ALJ found that NP

Thornton's opinion is "generally persuasive to the extent [it] [sic] supports the adopted residual functional capacity." AR 29. The ALJ found, however, "no additional limitations in [Plaintiff's] vision beyond her need to use glasses, goggles, and contact lenses," and that Plaintiff has no limitations for driving, because she continues to drive AR 29.

With regard to NP Thornton's opinion about Plaintiff's vision impairment, Plaintiff again argues that the ALJ erred by substituting his own judgment for that of NP Thornton by finding that the use of sunglasses, goggles, and gas permeable contact lenses are sufficient to accommodate her vision impairment. Again, the RFC does not need to directly correspond to a specific medical opinion; rather, "the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *See Rounds*, 807 F.3d at 1006; see also *Stubbs-Danielson*, 539 F.3d at 1174 (noting the ALJ's responsibility to weigh conflicting medical evidence and translate accepted medical opinions into "concrete restrictions"). Here, NP Thornton's opinion that Plaintiff has decreased vision due to irritation attributable to the prolonged use of her contact lenses is not a limitation, but rather an opinion that was properly incorporated into the RFC. Plaintiff testified that she is able to wear her gas permeable contract lenses for, at most, five hours. AR 58. Therefore, despite the irritation caused by her contacts, any need for a break to remove and clean her contact lenses is accounted for in a regular eight-hour workday with normal breaks.

**MEMORANDUM DECISION AND ORDER - 20**

Additionally, NP Thornton's opinion that Plaintiff cannot read computer screens was properly rejected when the ALJ found that Dr. Betts' opinion that Plaintiff's contact lenses were sufficient to account for her vision impairments.  In turn, the ALJ found that NP Thornton's opinion with regard to Plaintiff's capacity to read computer screens exceeds that of Dr. Betts.  Again, the ALJ found that NP Thornton's opinion was generally persuasive, but only to the extent that that the opinion supported the adopted RFC. Transitively, the ALJ found NP Thornton's opinion with regard to Plaintiff's capacity to read computer screens unpersuasive because there was little basis for the opinion that Plaintiff cannot read computer screens.

Although Plaintiff argues that the ALJ did not offer any explanation for the rejection of the "limitation" on Plaintiff's capacity to read computer screens, the ALJ also incorporated NP Thornton's opinion into his finding on the severity of Plaintiff's bilateral keratoconus.  The ALJ found that, although Plaintiff has difficulty reading and using computer monitors, as opined by NP Thornton, Plaintiff's vision has improved to 20/20 since receiving her gas permeable contact lenses, and her vision has significantly improved.  AR 27.  A reviewing court must consider the agency's decision as a whole, "[l]ooking to all the pages of the ALJ's decision," when determining whether substantial evidence supports that decision.  *Kaufmann v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022).  Reading the ALJ's decision as a whole, these descriptions support the ALJ's finding that NP Thornton's opinion was generally persuasive, but only to the extent that that the opinion supported the adopted RFC.

**MEMORANDUM DECISION AND ORDER - 21**

The medical records are also consistent with the ALJ's finding that there is little basis for NP Thornton's opinion that Plaintiff has limitations reading computer screens. During his examination, Dr. Betts found that Plaintiff is able to read a standard computer and read a standard computer with accommodations (i.e., her contact lenses).  AR 725. Thus, the ALJ's finding that NP Thornton's opinion was generally persuasive, but only to the extent that that the opinion supported the adopted RFC, is supported by the evidence.

With regard to NP Thornton's opinion on Plaintiff's capacity for gross manipulation, Plaintiff argues that the ALJ failed to explain the omission of the limitation on gross manipulation.  (Dkt. 15 at 10.)  The Ninth Circuit has held that the omission of a limitation is harmless when the occupations identified do not require that activity.  *See Stubbs-Danielson*, 539 F.3d at 1174.  The limitation on gross manipulation was not included in the RFC.  *See* AR 24.  At step four, however, the ALJ found that Plaintiff could perform her past relevant work as a technical support specialist as it was performed.  AR 30-31 (stating that her past work was "actually performed at a sedentary level.")  During her hearing testimony, Plaintiff described her job as requiring "really using your mind, not your body[,]" such that Plaintiff does not need to "lift[] any particular weight and "talk[s] to customers on the phone."  AR 54.  In performing her past relevant work, Plaintiff was not performing any gross manipulations.  Thus, any error in omitting a limitation on gross manipulation was harmless.  *See Stubbs-Danielson*, 539 F.3d at 1174.

**III.    Plaintiff is able to perform her past relevant work.**

A claimant who can perform her past relevant work is not disabled at step four of the sequential evaluation.  20 C.F.R. §§ 404.1560(b)(3), 416.960(b)(3).  The claimant bears the burden to establish that she cannot do any of her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f).  This assessment is made by comparing the RFC finding to the requirements of the work.  *Id.*  The ALJ may determine that a claimant is not disabled because she remains physically and mentally able to do her previous work, without investigating whether that previous work exists in significant numbers in the national economy.  *Barnhart v. Thomas*, 540 U.S. 20, 29-30 (2003).

Here, the ALJ found at step four that Plaintiff can perform her past relevant work as a technical support representative.  AR 30-31.  Thus, the ALJ found that Plaintiff was not disabled.  *See* 20 C.F.R. §§ 404.1560(b)(3), 416.960(b)(3).  Plaintiff argues that the VE's limited knowledge about how Plaintiff's need to use sunglasses or goggles could affect job availability undermines the ALJ's finding that Plaintiff could perform past relevant work.  However, the VE testified that, to her knowledge, the need to use sunglasses or goggles would not interfere with the job functions.  AR 67.  Further, the ALJ is not required to consider how many employers would consider this accommodation, because the ALJ was not required to investigate whether her previous work exists in significant numbers in the national economy.  *See Barnhart*, 540 U.S. at 29-30

Plaintiff also argues that the ALJ's alternative findings at step five are unsupported by the evidence.  In addition to his step four finding, the ALJ found, in the alternative, that that Plaintiff can perform, including work as food and beverage order clerk, callout operator, and touchup screener.  AR 32.  Plaintiff contends that, if the limitations on gross manipulation set forth by NP Thornton were incorporated into the RFC, only one occupation from the ALJ's step five finding (e.g., callout operator) would remain, and the occupation of callout operator has approximately only 14,000 positions in the national economy.  AR 68.

Although there is no bright-line rule for what constitutes a significant number, the Ninth Circuit has not found 14,000 positions be a significant number.  *See Gutierrez v. Comm'r Soc. Sec.*, 740 F.3d 519, 528 (9th Cir. 2014) (holding that an ALJ's finding that 25,000 national jobs is sufficient presents a close call, but constitutes a significant number of jobs).  The Ninth Circuit has also held that the availability of 1,680 national jobs does not constitute a significant number of jobs.  *Beltran v. Astrue*, 700 F.3d 386, 390-91 (9th Cir. 2012). The Ninth Circuit has found "a comparison to other cases…instructive."  *Id.* at 389.

Here, the 14,000 national jobs available to Plaintiff as a callout operator is less than the 25,000 positions the Ninth Circuit deemed to be a "close call" in *Gutierrez*. However, the actual total number of national jobs, including the provided alternatives of food and beverage clerk and touchup screener, is 34,000 positions, a significant number in the context of *Gutierrez*.  Further, even if the ALJ erred by omitting a limitation on

gross manipulation, the same is harmless, because the ALJ adequately found that Plaintiff can perform her past relevant work, which has no gross manipulation requirements as actually performed.  Therefore, the ALJ properly found, at step four, that Plaintiff is not disabled.

## CONCLUSION

Based on the foregoing, pursuant to 42 U.S.C. § 405(g), sentence four, the Court will affirm the Commissioner's decision.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that:

1)  The decision of the Commissioner of Social Security is AFFIRMED; and

2)  Judgment shall be ENTERED consistent with the above in favor of Defendant.

DATED: February 21, 2024

Honorable Candy W. Dale
United States Magistrate Judge